UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ROBERT E. MAHON,

                    Plaintiff,     :

              -against-       :

CAROLYN W. COLVIN,          :
ACTING COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,    :

             Defendant.    :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

13-CV-8817 (AT)(KNF)

TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Robert E. Mahon ("Mahon") commenced this action against the Acting Commissioner of

Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ")

decision, dated August 13, 2012, finding him ineligible for disability insurance benefits,

pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434.  Before the Court

are the parties' motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.

## ALJ'S DECISION

Mahon alleged the onset of his disability is December 31, 2010.  An administrative

hearing was held, on June 5, 2012, at which Mahon testified, and was represented by counsel.

The issue before the ALJ was whether Mahon is disabled.  The ALJ determined that Mahon:

(1) meets the insured status requirements of the SSA through December 31, 2014; (2) has not

engaged in substantial gainful activity since December 31, 2010; (3) has severe impairments:

status post cervical fusion, reflux esophagitis, reactive airway disease, asthma and post traumatic

stress disorder; (4) does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1; (5) has the residual functional capacity to perform light work, as defined in 20

C.F.R. § 404.1567(b), "can occasional[ly] flex and extend his neck," "can frequently perform

bilateral overhead lifting," but "must avoid concentrated exposure to respiratory irritants," and

"can understand, remember and carry out simple, unskilled work-related tasks"; (6) is unable to

perform past relevant work as a firefighter; (7) was born in 1967 and was 43 years old on the

alleged disability onset date; and (8) has at least a high school education and is able to

communicate in English.  The ALJ also found that transferability of job skills is not material to

the determination of disability because using the Medical-Vocational Guidelines as a framework

supports a finding that Mahon is not disabled, regardless of his transferable job skills.  The ALJ

determined that, considering Mahon's age, education, work experience and residual functional

capacity, jobs exist in significant numbers in the national economy that he can perform.  The

ALJ found that "the additional limitations have little or no effect on the occupational base of

unskilled light work."  The ALJ concluded that Mahon has not been under disability from

December 31, 2010, through the date of the ALJ's decision.

     At step three of the sequential analysis, the ALJ found that Mahon had mild restrictions

in activities of daily living and mild difficulties in social functioning.  The ALJ considered a

medical assessment, prepared in July 2011 by M. Marks ("Marks"), a State Agency review

analyst, in which it was noted that Mahon was able to understand and remember work

procedures, could maintain adequate attention and concentration to complete work-like

procedures, sustain a routine, can relate and respond in a limited contact setting and could cope

with simple changes in a work environment and make simple decisions.  The ALJ gave Marks's assessment some weight finding that Mahon is able to make simple decisions.  However, the ALJ gave little weight to Marks's assessment that Mahon would need a limited contact setting because it is in direct contrast to the reports from Dr. John Laurence Miller ("Dr. Miller"), a consultative psychiatrist interviewer, and Mahon's daily activities.

The ALJ considered the 2012 statements by Jeanne Andrews, Mahon's social worker, that Mahon had 10 psychotherapy appointments with her and he showed various symptoms, including post traumatic stress disorder, distressing dreams, sleep difficulties, intrusive thoughts and fatigue.  However, the ALJ gave no weight to her assessment because no records were submitted in its support, she had a short, three-months treatment history with Mahon and was not a recognized medical source.  The ALJ also considered the "Axis I" diagnosis of post traumatic disorder, provided by Dr. Miller, giving Dr. Miller "some weight as an expert."

The ALJ found that Mahon's allegations respecting his inability to work on a continued, sustained basis as a result of his functional limitations were not credible.  In his application for benefits, Mahon stated that he cannot work due to double fusion of the cervical spine, post traumatic stress disorder and lung ailments, and that his condition is worsening constantly.  He also stated that he had trouble tending to some of his personal needs and that his activities are limited by his condition.  At the hearing, Mahon testified that he has neck pain that travels to his left shoulder and causes numbness in both hands, symptoms that have not improved after undergoing a cervical discectomy and fusion.  He reported taking over-the-counter pain medication and prescription inhalant medication as needed due to breathing problems.  The ALJ noted that the objective documentary evidence demonstrates that Mahon can flex and extend his neck occasionally and can perform frequently bilateral overhead lifting.  The ALJ found that

3

Mahon must avoid concentrated exposure to respiratory irritants.

In evaluating Mahon's credibility, the ALJ found his allegations of debilitating symptoms were "not wholly credible" for several reasons. The ALJ explained that Mahon described his daily activities that are not limited to the extent one would expect given Mahon's disabling symptoms and limitations. For example, Mahon testified that he performs child care and that he took a flight to Myrtle Beach, South Carolina, in January 2012, and Ireland, in May 2012, where he traveled for his wedding. In May 2010, Mahon advised a consultative psychiatrist interviewer that he cooks and performs light cleaning at home. In May 2011, Mahon advised a consultative internist that he cooks and performs child care two to three times per week.

The ALJ found that Mahon's testimony at the hearing was tailored to show less of a residual functional capacity than that reported to the consultative examiner, which undermined Mahon's testimony concerning pain and his ability to function. Moreover, Mahon only recently started being prescribed Tramadol for his pain symptoms and stated he used it sparingly.

The ALJ also considered Mahon's treatment, noting that Mahon was offered physical therapy, but failed to follow up, which also undermined his testimony concerning his subjective complaints. The ALJ noted that Mahon's testimony was contradicted by the April 2012 report of Dr. William Kennedy Main ("Dr. Main"), Mahon's spinal surgeon, who noted that Mahon only reported having mild residual pain in his neck and that he denied having pain symptoms in his arms. Neurological testing at that time was intact and range of motion was limited and painful. Overall, Dr. Main found that Mahon was doing well from a post-operative standpoint, which supports the conclusion that Mahon is capable of performing light work with limitations regarding his neck movements and overhead lifting. The ALJ found Mahon's testimony

4

concerning his pain and functional limitations "not fully credible."

The ALJ considered a consultative internal examination conducted by Dr. Ilene Stone ("Dr. Stone").   Dr. Stone found that Mahon had normal gait, was able to heel and toe walk, had tenderness in the cervical paraspinals, his range of motion of the lumbosacral spine was within normal limits and he had full range of motion of the shoulders.  Dr. Stone found no sensory deficits, Mahon's grip was intact and his pulmonary function studies were normal.  Dr. Stone asserted that Mahon has moderate restrictions for lifting, reaching, pushing and pulling, as well as activities requiring that he turn his neck.  She also assessed that Mahon has minimal limitations for prolonged sitting and standing.  The ALJ gave Dr. Stone's assessment some weight and found that, overall, it supported a finding of light residual functional capacity with limits on frequently reaching overhead bilaterally and restrictions on neck turning.

The ALJ also considered the: (1) November 2011 report by Dr. Kelly C. Stets ("Dr. Stets"), which revealed that Mahon sought evaluation and treatment for complaints of worsening left shoulder, and neck pain of moderate severity; and (2) March 2012 report, assessing that Mahon was precluded from performing sedentary work and had significant postural limitations, as well as limitations in reaching, feeling, handling, pushing and pulling due to a lumbar strain, degenerative discs and a cervical spine fusion.  However, the ALJ gave little weight to Dr. Stets's assessments because the reports indicated that Mahon was not taking any prescribed pain medication, he did not commence physical therapy as recommended and he had a short treatment history with Dr. Stets.  Morever, Dr. Stets's physical examination elicited findings that showed Mahon was not as exertionally limited as Dr. Stets assessed.

The ALJ considered the March 2012 report by Dr. Paul L. Schulster ("Dr. Schulster"), which revealed that Mahon was diagnosed with reactive airway disease and asthma, confirmed

by clinical examination and tests. Dr. Schulster opined that Mahon had a severe pulmonary condition and would not be capable of performing any job requiring him to be on his feet for much of the day, to lift more than a few pounds on a sustained basis or to work near any dust or caustic chemicals. The ALJ afforded no weight to this assessment, given it was not well supported by substantial evidence in the record and that Mahon had a short period of treatment with Dr. Schulster, seeing him only on three occasions.

The ALJ found that Mahon is unable to perform past relevant work as a firefighter. In determining whether Mahon can adjust successfully to other work, the ALJ noted that, if Mahon had the residual functional capacity to perform the full range of light work considering his age, education and work experience, a finding of not disabled would be directed by Medical-Vocational Rule 202.21. The ALJ found that Mahon's additional limitations have little or no effect on the occupational base of unskilled light work, resulting in the finding of no disability.

## PLAINTIFF'S CONTENTIONS

Mahon makes two arguments: (1) he lacks the exertional capacity for light work; and (2) the established non-exertional functional limitations precluded reliance on the medical-vocational rules. With respect to his first argument, Mahon contends that the medical evidence does not support a finding that he retained the exertional capacity for light work because light work requires an individual to be capable of lifting and carrying frequently objects weighing as much as ten pounds. Mahon asserts that Dr. Stone identified moderate limitations in lifting, reaching, pushing and pulling and any activity requiring turning of the neck. According to Mahon, Dr. Stone "did not have access to the complete medical record, i.e., the MRI tests, and as such her opinion is somewhat incomplete." Furthermore, "the ALJ cannot claim that the description of 'moderate' comports with the demands of light work.

Concerning Mahon's second argument, he contends that his additional non-exertional limitations, namely, that he: (1) could only flex and extend his neck occasionally; (2) could perform no more than frequent overhead lifting; (3) needed to avoid concentrated exposure to respiratory irritants; and (4) was limited to understanding, remembering and carrying out simple and unskilled work-related tasks, precluded the ALJ's reliance on the medical-vocational rules. According to Mahon, the ALJ's conclusion that his additional non-exertional limitations did not pose significant non-exertional limitations that would erode the base of unskilled light work is erroneous because Mahon's mental limitations, alone and in combination with the remaining non-exertional limitations, required the ALJ to secure the testimony of a vocational expert.

Mahon asserts that Dr. Miller found that he appears to have significant difficulty dealing appropriately with stress, and Dr. Marks noted that Mahon experienced a moderate limitation in maintaining social functioning, concentration, persistence and pace.  Dr. Marks opined, inter alia, that he expected Mahon to exhibit moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, coordinate with others without being distracted, complete a normal workday without interruption from psychologically based symptoms and respond appropriately to changes in the work setting.  Additionally, Dr. Stone opined that Mahon experienced moderate limitation in reaching, which the ALJ acknowledged, but "failed to explain why Dr. Stone's more generalized limitation for reaching was not supported by the evidence and Mr. Mahon's status post cervical fusion surgery."  Mahon asserts that the ALJ dismissed Dr. Schulster's report improperly, as not supported by the record, and failed to acknowledge that Dr. Schulster "performed pulmonary function testing in 2011 and 2012, which revealed post-bronchodilator FVC results ranging from 65 to 72% of predicted and FEV1 results as 65 to 71% of predicted range."  Mahon asserts that, "[w]hile not listing level, these values

7

more than amply support a significant respiratory limitation and provide sufficient 'objective' medical evidence to support Dr. Schulster's opinion that he could not work on a sustained basis near dust or caustic chemicals." Mahon maintains that, based on these multiple significant non-exertional limitations established by the record, it was an error to rely on the medical-vocational rules to deny his disability claim.

### DEFENDANT'S CONTENTIONS

The defendant contends that substantial evidence supports the ALJ's finding that Mahon was capable of performing a significant number of jobs in the economy. According to the defendant, Mahon failed to show that he was incapable of performing light work. Although the plaintiff complained of neck pain with numbness in his right arm before the surgery, the ALJ noted that the contemporaneous records show the symptoms in Mahon's arm were relieved after surgery, as reported by Dr. Main. The ALJ also noted that, despite Mahon's allegation that he was unable to work because of pain, he failed to follow through with recommended physical therapy. Moreover, the ALJ found that Mahon's daily activities are not consistent with disabling symptoms. For example, although Mahon claimed he experienced the most discomfort with prolonged sitting and standing, the ALJ noted that Mahon flew to Ireland, in May 2012 for his wedding, and to Myrtle Beach, South Carolina, in January 2012. Additionally, Mahon reported to Dr. Stone that he cooked two to three times a week, performed child care, including attending children's after-school activities, spent time on the internet and watched "a lot of TV."

The defendant contends that the ALJ evaluated the opinion evidence properly. The ALJ considered Dr. Main's opinion that Mahon was totally disabled, but gave it little weight because it was inconsistent with Dr. Main's treatment notes, in which Dr. Main reported repeatedly that Mahon had only residual neck pain and was doing well generally, as well as encouraged Mahon

to exercise by walking, swimming or cycling.  Morever, whether Mahon is disabled is left to the Commissioner to decide, not Dr. Main.

The ALJ also evaluated Dr. Stone's opinion, giving it some weight and noting it was consistent with light work.  The defendant asserts that Mahon's argument that Dr. Stone did not have access to his complete medical history is erroneous because the record shows that Dr. Stone discussed Mahon's medical history, including the fact that in August 2009 he injured his neck and underwent a cervical discectomy and fusion and underwent a plate fixation, in February 2010.  The defendant contends that, although Dr. Stone did not mention the MRI results which prompted the surgery, Dr. Stone is aware, as a physician, "that such surgeries are not done without first obtaining diagnostic evidence such as MRIs."  The defendant asserts that Mahon's contention that Dr. Stone's opinion does not support light work because moderate limitation is not consistent with light work does not establish an error.  That is so because Mahon has the burden to identify evidence showing he was incapable of performing light work, and "the question is not whether the doctor's opinion supports light work, but whether it is inconsistent with light work."  The defendant contends that Dr. Stone's findings do not support Mahon's allegations to the extent that he was unable to work.

The ALJ considered Dr. Stets's assessment that Mahon was incapable of performing even sedentary work, noting that it indicated that Mahon was taking only over-the-counter medication and explaining that it was inconsistent with Mahon's failure to seek the treatment recommended by Dr. Stets.  The ALJ also considered Dr. Schulster's assessment, giving it no weight because it was not supported by substantial evidence in the record.  The supporting evidence provided by Dr. Schulster showed only mild pulmonary obstruction, and Mahon told Dr. Schulster in May 2011 that he had not required any doctor or emergency room visits.

9

The defendant asserts that the ALJ relied properly on the Medical-Vocational Guidelines because Mahon's limitations do not prevent its application. The ALJ's assessment shows that Mahon is capable of performing unskilled work because he can understand, remember and carry out simple, unskilled work-related tasks. Dr. Miller's conclusion that Mahon appeared to have significant difficulty dealing with stress does not establish that unskilled work was precluded. Moreover, Dr. Marks's opinion shows that Mahon was capable of understanding and remembering instructions and work procedures, as well as maintaining adequate concentration to complete work-like procedures and sustain a routine. The defendant maintains that the avoiding concentrated exposure to respiratory irritants limitation does not erode significantly the occupational base for light work.

## PLAINTIFF'S REPLY

Mahon contends that the ALJ's conclusion that he retained the ability to perform the full exertional demands of light work "is at odds with the report by the consultative examiner Dr. Stone, who identified 'moderate' limitations in lifting, reaching, pushing, and pulling and 'any activity requiring turning of the neck,'" which the ALJ acknowledged. According to Mahon, he relies on Dr. Stone's and Dr. Main's reports that a moderate limitation in lifting shows he cannot perform light work, and the defendant "is not entitled to interpret Dr. Stone's unspecific findings to support" a residual functional capacity for light work. Mahon asserts that, despite the defendant's argument that some of Mahon's activities support a finding that he could perform light work, the defendant "fails to demonstrate how the cited activities demonstrate the capacity to meet the sustained demands of light or sedentary work." For example, traveling to Ireland and South Carolina and attending his children's after-school activities do not show, alone or combined, "a level activity consistent with the sustained demands of sedentary or light work."

10

Mahon asserts that the ALJ failed to demonstrate that Mahon's mental and environmental limitations did not constitute significant non-exertional limitations.  The ALJ failed to explain his conclusion that Mahon's limitations have little or no effect on the occupational base of unskilled light work, and Mahon is "left to speculate as to the reasons the ALJ reached this conclusion."  Mahon contends that, at step three of the sequential analysis, the ALJ found that Mahon had mild limitations in activities of daily living and in social functioning and moderate limitations in concentration, persistence and pace, suggesting that "he would make 'a more detailed assessment' of Mr. Mahon's mental functional limitations by itemizing the various functions relevant at step four and five of the sequential evaluation, Tr. 18," but "he never made such detailed additional findings."  Mahon asserts that, contrary to the defendant's claim that no evidence exists of significant non-exertional mental limitations, the record includes such evidence that was not addressed by the ALJ, namely Dr. Miller's finding that Mahon appeared to have significant difficulty dealing appropriately with stress and Dr. Marks's finding that Mahon experienced moderate limitation in maintaining social functioning and maintaining concentration, persistence and pace.  Moreover, Dr. Marks also opined that he expected Mahon to exhibit moderate limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual, work in coordination or proximity to others without being distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of periods.  According to Mahon, the ALJ discarded the report by Dr. Schulster and the record of pulmonary function tests documenting genuine respiratory restrictions.

11

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Social Security Administration regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to

survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations omitted).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). "Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering work which exists in the national economy, the ALJ "will decide whether to use a vocational expert or other specialist." 20 C.F.R. §§ 404.1566(e).

[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused

solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## APPLICATION OF LEGAL STANDARD

### *Exertional Capacity to Perform Light Work*

The plaintiff contends that the ALJ: (a) erred when he concluded that, despite Dr. Stone's identification of moderate limitations in lifting, reaching, pushing and pulling and "any activity requiring turning of the neck," Mahon can perform light work and Dr. Stone's opinion "is somewhat incomplete"; and (b) "cannot claim that the description of 'moderate' comports with the demands of light work."  Mahon concedes that the ALJ considered Dr. Stone's opinion, including Dr. Stone's finding that Mahon "has moderate restrictions for lifting, reaching, pushing and pulling, as well as activities requiring turning of the neck," and he does not claim that the weight the ALJ gave to that opinion was erroneous.  That the ALJ gave Dr. Stone's opinion only "some weight," not contested by Mahon, indicates that the ALJ did not accept her opinion in its entirety.  Mahon alleges that Dr. Stone's opinion is "somewhat incomplete"

14

because Dr. Stone did not have access to "the MRI tests," without explaining what "somewhat incomplete" means.  Dr. Stone's report includes: a description of Mahon's chief complaint, past history, current medication, social history, activities of daily living, physical examination, diagnosis, prognosis and medical source statement.  Dr. Stone's finding of "moderate restrictions for lifting, reaching, pushing and pulling, as well as activities requiring turning of the neck" does not support Mahon's claim that he lacks the exertional capacity for light work, since the ALJ accorded only some weight to Dr. Stone's assessment.  Thus, his claim that the ALJ erred when he determined that Mahon has the residual functional capacity to perform light work is meritless.

In determining Mahon's residual functional capacity to perform light work, the ALJ considered Mahon's allegations of his inability to work on a continued, sustained basis as a result of his functional limitations and found them incredible.  He also considered Mahon's allegations of debilitating symptoms, but found them not entirely credible.  The ALJ explained the bases for his credibility findings, providing examples of various inconsistencies between Mahon's allegations and the record evidence, including Mahon's own testimony about his activities.  The ALJ considered reports by Dr. Main, Dr. Stone, Dr. Stets and Dr. Schulster, explaining the weight given and the bases for the weight.  Upon reviewing the record, the Court finds that substantial evidence supports the ALJ's finding that Mahon had the residual functional capacity to perform light work.

### *Reliance on the Medical-Vocational Rules*

Mahon argues that the ALJ dismissed improperly Dr. Schulster's March 2012 report without explaining the nature of the alleged impropriety, but contending that the ALJ failed to acknowledge that Dr. Schulster performed pulmonary function testing in 2011 and 2012.  Mahon does not point to any authority requiring the ALJ to acknowledge every piece of information in

15

the medical record before him, and he concedes that the test results do not indicate any particular level of limitation, but contends that "these values more than amply support significant respiratory limitation and provide sufficient 'objective' medical evidence to support Dr. Schulster's opinion that he could not work on a sustained basis near dust or caustic chemicals." However, the ALJ gave no weight to Dr. Schulster's opinion because it was "not well supported by substantial evidence contained in the record," which included Dr. Marks's opinion, accorded some weight, showing that Mahon was capable of performing unskilled work and could relate and respond appropriately in a limited contact setting.  The ALJ's finding that Mahon's limitation, namely, avoiding exposure to respiratory irritants, has little or no effect on the occupational base of unskilled light work, was proper.

Mahon also contends that the ALJ "suggested that he would make 'a more detailed assessment' of Mr. Mahon's mental functional limitations by itemizing the various functions relevant at step four and five of the sequential evaluation, Tr. 18," but "he never made such detailed additional findings."  However, this contention is not supported by the record because the ALJ's opinion does not demonstrate that the ALJ suggested "a more detailed assessment." The use of a vocational expert is discretionary, and the ALJ found, properly, that Mahon's limitations were not significant.  Thus, he made no error in relying on the Medical-Vocational Guidelines to determine whether jobs exist in significant numbers in the national economy that Mahon can perform.

Upon reviewing the record, the Court finds that the ALJ followed the five-step sequential analysis properly, when making the disability determination and committed no legal error.  The Court also finds that the ALJ's findings are supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (a) the plaintiff's motion, Docket Entry No. 12, be denied; and (b) the defendant's motion, Docket Entry No. 22, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, 500 Pearl Street, Room 2210, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      May 13, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

17